**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Howard Morr, ) | No. CIV-04-2356-PCT-MHM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Jo Anne B. Barnhart, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

      Plaintiff Howard Morr seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying his claim for disability insurance benefits. 42 U.S.C. § 405(g).

**I.**    **Procedural History**

      On October 6, 1999, Plaintiff Howard Morr ("Plaintiff") filed a claim for social security disability under Titles II and XVI. Plaintiff alleges an onset date of July 15, 1999. (Tr. 51). On December 5, 2001, a hearing was held, at the request of Plaintiff, in front of an Administrative Law Judge ("ALJ") in Laughlin, Nevada. (Tr. 352-382). The ALJ denied Plaintiff's application and the Appeals Council denied review. (Tr. 383-93). Plaintiff sought judicial review and upon stipulation between Commissioner and the Plaintiff the matter was remanded for agency proceedings. (Tr. 402). On remand, a hearing was held in front of the ALJ in Bullhead City, Arizona on March 30, 2004. (Tr.321-51). The ALJ again denied Plaintiff's application in a decision dated May 17, 2004 and the Appeals Council again declined to review. (Tr. 204-16). Plaintiff again seeks judicial review and has filed a Motion

for summary judgment (Dkt.#6) of which the Defendant opposes and files her own cross-motion for summary judgment. (Dkt.#11).

## II. Background Facts

### A. Plaintiff's Medical History

On Plaintiff's application for disability signed October 23, 1999, Plaintiff related that his ability to work was limited because of high blood pressure, carpal tunnel syndrome in both hands, tendonitis, a right foot injury and a bite from a rattlesnake. (Tr. 58). On September 8, 1999, Plaintiff was evaluated by Ronald Bennett, M.D., who found evidence of extensive tendonitis of the thumb tendons suggesting "De Quervain's tenosynovitis" as well as carpal tunnel syndrom. (Tr. 147). Plaintiff was prescribed Celebrex and carpal tunnel splints. (Id.).

On February 15, 2000, Plaintiff was examined by Robert Barker, M.D. ("Dr. Barker") of the Arizona Department of Economic Security at the ALJ's request. Upon examination, Dr. Barker opined that Plaintiff had "strong musculature and should be able to lift at least 50 pounds occasionally and at least 25 pounds frequently." (Tr.149). He also found that Plaintiff could stand or walk for at least four hours in an eight-hour day and could sit for six hours in an eight-hour day. (Id.). Dr. Barker noted that alternating sitting and standing may be required for discomfort. He also noted that Plaintiff had "no limitations in pushing or pulling with either the lower or upper extremities" as well as recommended that testing would be necessary to determine if Plaintiff had cardiac arrhythmia abnormality. (Tr. 149-50).

On September 18, 2000, Plaintiff was seen by Ismail Bokhari, M.D. ("Dr. Bokhari"), upon referral from Plaintiff's treating physician, Michael Mastakas, M.D. ("Dr. Mastakas"). After evaluating the Plaintiff, Dr. Bokhari concluded that Plaintiff was in good condition with "no acute distress." (Tr. 163). He diagnosed Plaintiff with "[a]typical chest pain, [p]aroxysmal tachysrhythmia [and] [p]ossible coronary artery disease." (Tr. 163).

On October 11, 2000, Plaintiff was again examined by a state physician, Muhammed Nayer, M.D. ("Dr. Nayer"), at the ALJ's request. Dr. Nayer noted that Plaintiff's "chief

complaints and disabling factors remain to be his chest pains and blacking out spells." (Tr. 171). He further opined that "his prognosis is guarded." (Id.). Dr. Nayer concluded that Plaintiff required "evaluation with testing, such as nerve conduction EMG testing, to further substantiate the issue of carpal tunnel syndrome versus ulnar nerve compression neuropathy." (Tr. Id.). Also he stated that "[w]ith his current chest pains on a daily basis, he may not be a good candidate for employability at the present time." (Id.).

On October 26, 2001, upon inquiry from Plaintiff's counsel, Dr. Mastakas opined that "patient has chronic back, neck and knee pain due to arthritis. He also gets palpitations and dizziness from cardiomyopathy based on these. I believe patient would miss more than one day of work a month on average." (Tr.203).

In November 2001, Plaintiff was admitted to Kingman Regional Medical Center for two days of atrial fibrillation. (Tr.426-486). Upon conclusion of the treatment, Plaintiff again treated with Dr. Mastakas. (Tr. 229). Plaintiff related to Dr. Mastakas that his heart rate was controlled with the medications of Lanoxin and Procardia. (Id.).

**B.     Hearing Testimony**

At the hearing on March 30, 2004, Clifford Harris, M.D. ("Dr. Harris"), testified as a medical advisor. (Tr. 325-338). The ALJ requested Dr. Harris to separate out two periods regarding Plaintiff's medical condition; July 15, 1999 through December 31, 2000 (the date the Plaintiff was last insured) and January 1, 2001 forward. Dr. Harris testified that during the earlier period, the Plaintiff did not meet or equal any listing. (Tr. 329). Moreover, he opined that Plaintiff has some functional capacity limitation to the extent that he would probably be able to lift 40 to 50 pounds once in awhile and probably lift 10 to 20 pounds regularly. (Tr. 330). Dr. Harris also testified that Plaintiff's condition improved after November of 2001 with the diagnoses of his atrial fibrillation. (Tr. 331). On cross-examination, Dr. Harris agreed that it was "medically reasonable" for Dr. Mastakas to opine that the Plaintiff would miss more than one day of work per month between July of 1999 and the completion of the form disclosing Dr. Mastakas' opinion on October 26, 2001. (Tr. 338).

Subsequent to Mr. Harris' testimony, Mark Kelman ("Mr. Kelman"), a vocational

expert, testified regarding Plaintiff's employment status. (Tr. 346). Mr. Kelman testified that based upon Dr. Harris' findings, for the period through the date the Plaintiff was last insured or December 31, 2000, and subsequent to, that Plaintiff would be able to perform work in various capacities. (Tr. 347-49). For instance, Mr. Kelman testified that Plaintiff would be able to perform past relevant work as a production worker. (Tr. 347). Moreover, Plaintiff would be able to perform other jobs in the national or local economy including janitorial work, work as a laundry worker and an unarmed security guard. (Tr. 348). Upon cross-examination, Mr. Kelman, as he testified at the original hearing, stated that if Plaintiff were to miss one day of work per month or more he would not be able to work in any work setting, "regardless of physical capacities." (Tr. 350).

### C.    The ALJ's Conclusion

On May 17, 2004, the ALJ concluded that Plaintiff was not "disabled" within the meaning of the Act. (Tr. 304-16). Specifically, the ALJ concluded that Plaintiff possessed the "severe impairments" of hypertrophic cardiomyopathy, syncopal episodes and arthritis; however they did not meet or equal in severity any of the listed impairments of Appendix 1, Subpart P, Regulation No. 4. (Tr. 315). Further, the ALJ found that based upon his residual functional capacity, there are "a significant number of jobs in the national economy the claimant can perform." (Id.).

The ALJ based this conclusion, in part, upon the rejection of Dr. Mastakas' opinion that, on average, Plaintiff would miss more than one day of work per month. (Tr. 311). Specifically, the ALJ found that the treatment records "do not support this degree of limitation." (Id.). The ALJ expanded on this by noting that "[t]he claimant indicated his symptoms occurred off and on, and progress notes do not reveal the claimant reported shortness of breath or dizziness on a consistent basis. Therefore, the records of Dr. Mastakas are insufficient to support his opinion." (Id.). Additionally, the ALJ rejected Dr. Nayer's October 11, 2000 opinion that the Plaintiff "may not be a good candidate for employment at this time" on the basis that it "was based on the claimant's subjective complaints of chest pain." (Tr. 310).

- 4 -

1    The ALJ also relied upon the testimony of Dr. Harris in reaching his conclusion. Specifically, he noted that the medical expert, Dr. Harris, concluded that currently, the claimant has no disability that would prevent him from working and that the statement from Dr. Mastakas was not supported by the evidence as a whole. (Tr. 313).  Lastly, the ALJ relied upon the testimony of vocational expert, Mr. Kelman, who testified that based upon the limitations set forth by Dr. Harris, there would be jobs available in the national or local economy.  (Tr. 347).  The ALJ also cited Mr. Kelman's opinion that there would be no jobs in the national economy if the claimant were miss to more than one day of work per month. The ALJ held "this opinion is speculative at best, and is not based on any objective medical evidence of the claimant's reported activities."  (Tr. 314).

### III.     **Standard of Review**

This Court must affirm the ALJ's findings if they are supported by substantial evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination.  Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990).  Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Therefore, if on the whole record before the Court, substantial evidence supports the Commissioner's decisions, this Court must affirm.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

(1) determine whether the applicant is engaged in "substantial gainful activity;"

(2) determine whether the applicant has a "medically severe impairment or combination of impairments;"

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

**IV.   Discussion**

Plaintiff requests the Court to reject the ALJ's determination and remand this matter with an award of benefits. Specifically, Plaintiff argues that there is sufficient evidence in the record demonstrating a closed period of benefits from the onset date, July 15, 1999 through November 1, 2001 based upon the evidence suggesting that the Plaintiff would miss, on average, more than one day of work per month. Plaintiff does not argue that any benefits should be awarded beyond this period.[1] Plaintiff's argument for reversible error is based upon two related arguments: (1) The ALJ afforded incorrect weight to Plaintiff's treating physician's opinion and (2) the ALJ has misinterpreted the evidence and the testimony of the medical expert, Dr. Harris, thus leading to a flawed result.

**A.   The ALJ Improperly Rejected Dr. Mastakas' Opinion.**

---

[1] 20 C.F.R. § 404.316 provides that the Secretary can award Social Security disability benefits either on a continuing basis or for a closed period.

- 6 -

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001). "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). Greater weight must be given to the opinion of treating physicians, and in the case of a conflict "the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician." Id. Bergfeld v. Barnhart, 361 F. Supp.2d 1102, 1111 (D. Ariz. 2005). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Thomas v. Barnhart, 278 F.3d 947, 957 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)). Thus, the question before the Court is whether the ALJ properly considered and disregarded Plaintiff's treating physician's, Dr. Mastakas' opinion, that Plaintiff would on average miss more than one day of work per month due to his medical condition. (Tr. 204).

As noted above, the ALJ's basis for rejecting the opinion of Dr. Mastakas was that the medical records do not support his conclusion and Plaintiff's reported symptoms only occurred on an "off and on" basis. (Tr. 311). Additionally, Defendant argues that Dr. Mastakas' opinion was conclusory and not subject to any degree of deference. Defendant cites that the ALJ is permitted to investigate the opinions offered by a treating physician and is not obligated to accept the treating physician's conclusion on its face. For instance, in Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) the Ninth Circuit affirmed that an ALJ, in rejecting a treating physician's opinion, may reject the opinion on the basis that it is "conclusory and unsubstantiated by relevant medical documentation."

In reviewing the ALJ's opinion and the arguments advanced by the Defendant, it is apparent to the Court that the ALJ did not properly consider the treating opinion of Dr. Mastakas with respect to the issue before the Court of a period of closed benefits. For

1  instance, the basis for rejecting Dr. Mastakas' opinion regarding absenteeism is that the
2  treatment records do no support his opinion.  However, in making this determination, the
3  ALJ cites only one record that falls within the scope of the relevant period before the Court;
4  July 15, 1999 through November 1, 2001.  Specifically, he cites Dr. Mastakas' record on
5  October 25, 2000 that noted that Plaintiff only reported the symptoms, related to the snake
6  bite, on an "on and off" basis. (Tr. 231).  The ALJ then went on to cite several other medical
7  records that were dated subsequent to November 1, 2001. (Tr. 311-12).

8        In evaluating the relevant medical record falling within the relevant period regarding
9  Plaintiff's "off and on" symptoms, the Court finds that it is not detrimental to the Plaintiff's
10 position that Dr. Mastakas noted that Plaintiff did not encounter these symptoms on a
11 consistent basis. (Tr.231).  When looking at this testimony in the context of the true issue
12 before the Court of whether Plaintiff's condition would cause absenteeism within the closed
13 period, it is apparent that such an opinion is probative.  For example,  an "off and on"
14 encounter with such symptoms support Dr. Mastakas' subsequent opinion on October 26,
15 2001, that Plaintiff's condition would likely cause him to miss more than one day of work
16 per month. (Tr.203).  In other words, if these symptoms were consistently severe on a daily
17 basis then presumably Dr. Mastakas would have opined that Plaintiff would not be able to
18 work any day during the month.  However, that type of impairment is not at issue.  Rather,
19 severe symptoms that occur periodically, which Dr. Mastakas opined, may well cause such
20 absenteeism of at least one day of work per month.

21       Based upon the little probative evidence cited by the ALJ regarding the issue before
22 the Court, the Court cannot say that the ALJ's evaluation is sound.  Moreover, the other
23 records cited by the ALJ regarding Plaintiff's medical condition subsequent to the period in
24 question provide very little probative value to the issue of a closed period from the onset date
25 through November 1, 2001.  On this basis, it appears that the ALJ's determination in
26 rejecting the opinion of Dr. Mastakas fails to set forth the specific and legitimate reasons to
27 reject Dr. Mastakas' opinion regarding Plaintiff's absenteeism.  In order to meet his
28

1 obligation, the ALJ should have set forth specific and legitimate reasons supported by
2 substantial evidence in the record regarding evidence that is probative of the period at issue.

### (B)     The ALJ Improperly Rejected Dr. Nayer's Opinion

Additionally, in looking at records occurring during the relevant time period, it is clear there is support for the opinion regarding the Plaintiff's absenteeism. For instance, Dr. Nayer, a state examining physician, opined that on October 18, 2000, after examining the Plaintiff, that Plaintiff's prognosis was "guarded" and that the Plaintiff "may not be a good candidate for employment at this time." See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (stating that opinion of examining physician, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record). However, in reviewing the ALJ's opinion, it is clear that he did not properly afford Dr. Nayer's examination proper weight. The ALJ simply rejected Dr. Nayer's opinion on the basis that it "was based upon the claimant's subjective complaints of chest pain." (Tr. 310). This blanket rejection does not comply with the ALJ's obligation to evaluate the examining physician's opinion.

Under Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986), "a claimant who alleges disability based upon subjective symptoms 'must produce objective medical evidence of an underlying impairment which would reasonably be expected to produce the pain or other symptoms alleged.'" Bergfeld v. Barnhart, 361 F. Supp.2d 1102, 1114 (D.Ariz. 2005). "The claimant need not produce objective medical evidence of the pain or [other symptoms], or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." Id.

Here, there is objective medical evidence in the record supporting an underlying impairment which reasonably could produce the chest pain complained of by Plaintiff. For instance, Dr. Mastakas, Plaintiff's treating physician, provided his opinion that Plaintiff suffers from cardiomyopathy and this was one of the severe impairments attributed to Plaintiff. (Tr.204, 309). Moreover, Dr. Ismail Bokhari, on September 18, 2000, diagnosed Plaintiff with "atypical chest pain, Paroxysmal tachysrhythmia and possible coronary artery

disease." (Tr. 163). Such impairments provide objective support of Plaintiff's complaints of chest pains within the relevant period. Therefore, Plaintiff nor Dr. Nayer were required to point to specific objective medical evidence supporting this position nor the severity thereof. As such, the ALJ's rejection of Dr. Nayer's findings as being "based on the claimant's subjective complaints of chest pain" does not suffice to meet the applicable burden governing the opinions of examining physicians. See Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992) (stating that ALJ may not discredit claimant's subjective allegations of how bad his or her pain is solely on the ground that those allegations are not supported by the objective medical evidence.).

Again, had the ALJ wished to properly reject Dr. Nayer's opinion, he was required to advance the specific and legitimate reasons for rejecting this opinion, supported by substantial evidence in the record. He has failed to do so and the medical record reveals substantial evidence suggesting the existence of a serious medical condition during the period in question.

**C.    Dr. Harris' Testimony Provides Probative Value**

Lastly, despite Defendant's argument to the contrary, Dr. Mastakas' and Dr. Nayer's opinions are further supported by the testimony of the medical advisor physician, Dr. Harris. During his testimony he testified that during the period in question, it was "medically reasonable" for Dr. Mastakas to conclude that the Plaintiff would miss, on average, one day of work per month. (Tr. 338). Specifically, Dr. Harris testified in pertinent part:

> Q:   Okay. Well, I guess – and I'm not asking for your opinion necessarily of whether he would miss, but would it be medically reasonable for Dr. Mistokis (sic) to review the overall problems that the Claimant had between July of 1999 and his completion of that form in late 2001? Would it be reasonable for Dr. Mistokis to assess that he is – his patient would miss more than one day a month?
>
> A.   That is not – it is reasonable.
>
> Q:   It is reasonable?
>
> A.   He did state about the multiple traumas from motor vehicle accidents and the horse and the ribcage injuries and all of these things. And his might have been based upon that. I'm not certain.

(Tr. 337-38).

- 10 -

Defendant attempts to qualify this opinion by noting that Dr. Harris also testified that Plaintiff retained sufficient residual function capacity to lift 40 to 50 pounds "once in awhile" and 10 to 20 pounds regularly. (Tr. 330). Thus, Defendant contends that Dr. Harris' testimony establishes that Plaintiff was able to work. However, while Defendant may have been able to work during the relevant period, the issue is not whether he could work, but whether his condition would, on average, cause him to miss more than one day of work per month.

In focusing in on this latter issue it is apparent that there is substantial evidence from credible sources suggesting that Plaintiff would struggle with absenteeism during the relevant period. First, there is the opinion of Dr. Nayer, on October 11, 2000, a state examining physician, that Plaintiff may not be a good candidate for employment due to Plaintiff's chest pains. (Tr. 171). Second, there is the opinion from Plaintiff's treating physician approximately one year later, on October 26, 2001, stating that on average Plaintiff would miss at least one day of work per month. (Tr.204). Lastly, as mentioned above, there is the affirmation from the medical expert, Mr. Harris, that Dr. Mastakas' opinion was "medically reasonable." (Tr. 338). These provide strong support that Plaintiff's condition, while enabling him to work due to the symptoms occurring periodically, would likely have to miss more than one day of work per month.

### D. The Significance Of Plaintiff's Absenteeism

The obvious significance of the opinions and testimony discussed above is that, when taken as true, it completely eliminates Plaintiff as a candidate for employment. This is the conclusion reached by the vocational expert at both hearings. Mr. Kelman testified, on both occasions, that assuming such absenteeism existed, there would be no jobs in the national or local economy available to the Plaintiff, regardless of Plaintiff's physical capabilities. (Tr. 350). Again, the ALJ noted such a possibility, but rejected it as being speculative. However, in looking at the evidence in the record above, it is apparent that such a possibility rises above the speculative level during the period in question.

### E. Summary of the ALJ's Error

The ALJ has failed to provide the requisite specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician and the state examining physician, both falling within the period at issue, that based upon the likelihood that Plaintiff's condition would likely cause him to miss more than one day of work per month. These findings are further buttressed by the expert medical opinion of Dr. Harris, which the ALJ improperly evaluated as well with respect to the closed period of benefits before the Court.

### F.     Future Handling

In Connett v. Barnhard, 340 F. 3d 871, 876 (9th Cir. 2003), the Ninth Circuit set forth that an award of benefits is discretionary where the reasons for the ALJ's denial are legally insufficient.  If the court determines that there are specific findings still to be made than a remand is appropriate. Id.  The growing general rule appears to be that except in rare circumstances, the court should remand to the agency for additional explanation and investigation. INS v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).  The rare circumstances that would justify a remand with an entry of an award would be: (1) the ALJ failed to provide legally sufficient reasons for rejecting claimant's testimony, (2) there were no outstanding issues to be resolved before determination of disability could be made, and (3) it was clear from the record that ALJ was required to find claimant disabled if his pain testimony was credited. Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004).  Where this narrow test is met, the relevant testimony will be established to be true and a remand for benefits is proper. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Court finds that the ALJ improperly disregarded Dr. Mastakas', the treating physician's opinion, Dr. Nayer's, the examining physician's opinion, and the testimony of Dr. Harris, the medical advisor. In taking the opinions of Dr. Mastakas and Dr. Nayer as true in the context of a closed period of benefits, there is no further issue for the ALJ to consider if this matter were remanded, thus making this one of the rare instances where an award of benefits is proper. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (stating "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion "as a matter of law.""). At the outset of the

1. ALJ's May 30, 2004, decision the ALJ noted that disability within the meaning of the Act is
2. based upon a physical or mental impairment "which has lasted, or will last, a continuous 12
3. month period..." Thus, it is clear that the ALJ was at the very least cognizant of the
4. possibility of a closed period of benefits, but simply disregarded the opinions falling within
5. the closed period based, in part, upon other medical evidence falling outside this period.
6. Thus, because there are no more outstanding issues to be resolved and it is clear from the
7. record that Plaintiff is entitled to a closed period of benefits from his onset date through
8. November 1, 2001, remand with an award of benefits is proper.
9. **Accordingly,**
10. **IT IS HEREBY ORDERED** Plaintiff's Motion for summary judgment is granted.
11. (Dkt.#6).
12. **IT IS FURTHER ORDERED** Defendant's Motion for summary judgment is denied.
13. (Dkt.#11).
14. **IT IS FURTHER ORDERED** that this matter be remanded with an award of benefits
15. spanning from July 15, 1999 to November 1, 2001.
16. DATED this 27th day of March, 2006.

_____
Mary H. Murguia
United States District Judge